IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CV-17-D

| | | |
|---|---|---|
| JANICE CANADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PENDER COUNTY HEALTH | ) | |
| DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On November 20, 2014, Janice Canady ("Canady" or "plaintiff") filed this action in Pender County Superior Court against defendants Pender County, Pender County Health Department ("the Health Department"), and Director of the Health Department Carolyn Moser ("Moser")[D.E. 1-3]. On January 20, 2015, Pender County, the Health Department, and Moser (collectively "defendants") removed the action to this court based on federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a) [D.E. 1]. On January 27, 2015, defendants answered Canady's complaint [D.E. 8]. On April 1, 2015, defendants moved to dismiss the case for lack of subject-matter jurisdiction and failure to state a claim and filed a memorandum in support [D.E. 14, 15]. See Fed R. Civ. P. 12(b)(1), (6). On May 29, 2015, plaintiff responded in opposition to the motion to dismiss [D.E. 17]. On June 15, 2015, defendants replied [D.E. 20]. As explained below, the court grants defendants' motion to dismiss in part, dismisses with prejudice Canady's Family and Medical Leave Act ("FMLA") claim for failure to state a claim upon which relief can be granted, declines to exercise supplemental jurisdiction over Canady's state law claims, and remands the action to Pender County Superior Court.

I.

On October 11, 2004, Canady began working for the Health Department as a "Public Health Nurse," and eventually attained the status of "career state employee." Compl. [D.E. 1-3] ¶ 5. In 2008, Canady began serving as a dental assistant for the Health Department's mobile dental clinic. See id. ¶ 7. The clinic "traveled to schools in Pender County[,] providing dental care for underprivileged students who were enrolled in the Pender County school system." Id.

Canady's job description specified that she would work eight hours a day, between 8:00 a.m. and 5:00 p.m.. See [D.E. 15-3] 25, 58, 85–86. However, due to the clinic's work in schools and the structure of the school day, Canady's hours were highly variable. See id. 26. Regardless of the hours she actually worked, Canady always recorded eight hours on her time sheet. See Compl. ¶¶ 9–10.

Canady believed that her method of timekeeping was proper. See [D.E. 15-3] 85–86. Although she occasionally "worked less hours" than the eight she would put on her time sheet, she also "frequently worked more than 8 hours" and would "c[ome] to work early, work[ ] through lunch, or . . . work[ ] after 5:00 pm," while still recording only eight hours. See Compl. ¶¶ 9–10. Canady alleged that the hour discrepancies balanced out. Canady also alleged that between the fall of 2008 and April 3, 2012, her supervisors were aware of how she completed her time sheets and "no one had ever told [her] that they had a problem with the manner in which she completed her time sheets." See id. ¶ 10. Although the Health Department received new directors in both April and August of 2011, the new directors did not question Canady's timekeeping. See id. ¶¶ 10–13.

On January 4, 2012, Canady took FMLA leave to care for her husband, who needed heart surgery. Id. ¶ 13. On March 5, 2012, Canady returned to work. Id. ¶ 14.

2

On April 3, 2012, Moser held a pre-disciplinary conference with Canady about her timekeeping. See id. During the conference, Moser told Canady that Canady had been incorrectly recording her time and characterized the recordings as "falsifi[cations]." See id. On April 4, 2012, Moser terminated Canady's employment. Id.

On May 14, 2012, Canady filed a "Petition for Contested Case Hearing" with the North Carolina Office of Administrative Hearings ("NCOAH") and challenged her termination. Id. ¶ 16; see [D.E. 15-2] 2. In her petition, Canady alleged that the Health Department discharged her "without just cause." [D.E. 15-2] 2; see N.C. Gen. Stat. § 126-34.02(b)(3). Canady also alleged that her recording method was based on "approv[al] by the previous administration," that she "only did [it] because [she] was told [to do] that," and that she received no "counseling in regard to time and attendance." See [D.E. 15-2] 2, 4.

On February 14, 2013, a North Carolina Administrative Law Judge ("ALJ") heard Canady's case. Compl. ¶ 16. The Health Department was the respondent. See [D.E. 15-3] 6. During the hearing, Canady made the same basic argument she had made in her petition. Essentially, Canady claimed that while her job description stated that she would work from eight-to-five, her hours were often variable. Thus, she sometimes worked fewer than eight hours and sometimes worked more than eight hours, depending on the demands at the mobile dental clinic. See, e.g., id. 85–86. After the hearing, the ALJ found that the Health Department terminated Canady's employment without just cause. The ALJ ordered the Health Department to "[r]einstate [Canady] to her former position as Nurse Practitioner II . . . or a substantially similar position," to "[p]ay back pay . . . from the date of termination until her reinstatement, including all raises and/or merit bonuses paid to state employees of her rank which were paid from the date of termination until her reinstatement," and to "pay reasonable attorney's fees . . . for the prosecution of this action." See [D.E. 15-4] 17.

3

The Health Department appealed. On December 5, 2013, the Pender County Superior Court upheld the ALJ's decision. Order, Pender Cty. v. Janice Canady, 13 CVS 000549 (Pender Cty. Super. Ct. Dec. 5, 2013) (unpublished). On January 6, 2014, the Health Department filed a notice of appeal to the North Carolina Court of Appeals. See Mot. to Dismiss Appeal, Pender Cty. v. Canady, 13 CVS 000549 (Pender Cty. Super. Ct. May 7, 2014) (unpublished); Compl. ¶ 16; [D.E. 17] 4. The Health Department, however, did not perfect the appeal, and the Pender County Superior Court judgment is final. See Mot. to Dismiss Appeal, Pender Cty. v. Canady, 13 CVS 000549 (Pender Cty. Super. Ct. May 7, 2014); Compl. ¶ 16; [D.E. 17] 4.

In November 2014, Canady filed suit in Pender County Superior Court against the Health Department, Pender County, and Moser. Canady alleges that the Health Department, Pender County, and Moser violated the FMLA by "discriminat[ing] and/or retaliat[ing] against [Canady] for exercising her rights under FMLA." See Compl. ¶¶ 18–23. Canady also claims that the Health Department, Pender County, and Moser wrongfully discharged her in violation of the "public policy of the State of North Carolina" because exercising her FMLA rights "is a legally protected activity." See id. ¶¶ 24–28. Additionally, Canady asserts an "intentional infliction of emotional distress" ("IIED") claim and a "negligent infliction of emotional distress" ("NIED") claim against all three defendants. See id. ¶¶ 29–40.

II.

Defendants move to dismiss plaintiff's claims under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. See Mot. Dismiss [D.E. 14]. The court has subject-matter jurisdiction over Canady's FMLA claim under 28 U.S.C. § 1331 and supplemental jurisdiction over Canady's state-law claims under 28 U.S.C. § 1367(a). Thus, the court denies defendants' motion to dismiss under Rule 12(b)(1).

4

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal and factual sufficiency of the complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). A court need not, however, accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79.

In considering a motion to dismiss, a court may examine documents attached to the complaint or the motion to dismiss if those documents are integral to the complaint and authentic. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). Likewise, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Caper Corp. v. Wells Fargo Bank, N.A., 578 F. App'x 276, 276 n.1 (4th Cir 2014) (per curiam) (unpublished); see In re PEC Sols., Inc. Sec. Litig., 418 F.3d 379, 388 n.7 (4th Cir. 2005); Greenhouse v. MCG Capital Corp., 392 F.3d 650, 656–57 (4th Cir. 2004). A court may take judicial notice of public records such as court documents. See Philips, 572 F.3d at 180.

Defendants argue that the court should dismiss Canady's FMLA claim under the doctrine of

5

res judicata or because the administrative remedies that Canady received in the administrative process at NCOAH bar her FMLA claim. See [D.E. 15] 6 & n.1, 8–15. Defendants also argue that Canady has not stated a viable wrongful discharge claim under North Carolina law, that defendants' actions do not plausibly constitute "extreme and outrageous conduct" necessary for an IIED claim, and that Canady has not plausibly alleged the "severe emotional distress" necessary for an IIED claim or NIED claim. See id. 15–19. Finally, defendants argue that Moser has immunity for any claim against her in her individual capacity. See id. 19–24.

In Canady's FMLA claim, she seeks "back pay, front pay, and liquidated damages, less offset of any amounts previously paid to the Plaintiff." Compl. ¶ 22. Canady also seeks punitive damages. See id. ¶ 23.

In moving to dismiss Canady's FMLA claim, defendants argue that the administrative process made Canady whole. In support, defendants note that the ALJ awarded Canady back pay and reinstatement, thereby obviating any possible back pay or front pay award under the FMLA. Defendants also argue that because Canady has no back pay or front pay claim under the FMLA, she cannot recover liquidated damages under the FMLA. Finally, defendants argue that the FMLA does not provide for punitive damages.

FMLA remedies include "any wages, salary, employment benefits, or other compensation denied or lost to [an] employee by reason of [an FMLA] violation," "the interest on the amount" of wages lost, an "additional amount as liquidated damages," and reinstatement along with other forms of equitable relief. See 29 U.S.C. § 2617.[1] The FMLA does not, however, allow a party whose "compensatory damages have already been awarded through ... [another] process" to recover those

---

[1] Although FMLA remedies include interest on lost wages, see 29 U.S.C. § 2617(a)(1)(A)(ii), Canady has not requested such relief. See Compl. ¶¶ 22–23.

6

same damages under the FMLA. See, e.g., Poling v. Core Molding Techs., No. 2:10-CV-963, 2011 WL 2492772, at *3 (S.D. Ohio June 22, 2011) (unpublished).

Canady recovered back pay in the NCOAH administrative process. See [D.E. 15-4] 17. Thus, Canady's request for back pay under the FMLA in this action fails. See Poling, 2011 WL 2492772, at *3.

As for Canady's front-pay request, front pay under the FMLA serves only as "an alternative or complement to reinstatement." Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 307 (4th Cir. 1998). A court may award both front pay and reinstatement only under unique circumstances, such as when there is a "deferred order of reinstatement." Duke v. Uniroyal Inc., 928 F.2d 1413, 1424 (4th Cir. 1991); Cline, 144 F.3d at 307. Otherwise, to award both front pay and reinstatement creates a windfall for a plaintiff. See Duke, 928 F.2d at 1424.

As part of the NCOAH administrative process, the ALJ ordered the Health Department to reinstate Canady to her position or a "substantially similar" one. See [D.E. 15-4] 17. Furthermore, the ALJ awarded Canady back pay "from the date of termination until [plaintiff's] reinstatement." See id. Because Canady has been reinstated to her former position and compensated for all time between termination and reinstatement, Canady cannot recover front pay under the FMLA in this action. See, e.g., Cline, 144 F.3d at 307; Duke, 928 F.2d at 1424.

As for Canady's request for punitive damages under the FMLA, the claim fails. The FMLA does not permit the recovery of punitive damages. See, e.g., Alexander v. Carolina Fire Control Inc., No. 1:14CV74, 2014 WL 3729546, at *6 (M.D.N.C. July 25, 2014) (unpublished) (collecting cases).

The only remedy that Canady requests under the FMLA in this action that is both provided for under the FMLA and that she did not already receive is an award of "liquidated damages." See Compl. ¶ 22. Under the FMLA, liquidated damages are a sum of money "equal to the sum of the

7

amount awarded for damages and the interest on that amount." Dotson v. Pfizer, Inc., 558 F.3d 284, 301 (4th Cir. 2009) (emphasis added) (citing 29 U.S.C. § 2617(a)(1)(A)(iii)). The FMLA, however, does not permit a court to award liquidated damages when it has "no judgment on which to base an award of . . . liquidated damages." Coleman v. Potomac Elec. Power Co., 281 F. Supp. 2d 250, 255 (D.D.C. 2003), aff'd, 2004 WL 234814 (D.C. Cir. 2004) (per curiam) (unpublished); Dawson v. Leewood Nursing Home, Inc., 14 F. Supp. 2d 828, 833 (E.D. Va. 1998) (holding that a court may award liquidated damages "only if there is an award of damages under subsection (A)(i)"). Because this court cannot award Canady back pay, it likewise cannot award her liquidated damages. See, e.g., Dotson, 558 F.3d at 301; Coleman, 281 F. Supp. 2d at 255. Accordingly, the court grants defendants' motion to dismiss Canady's FMLA claim with prejudice. In light of this conclusion, the court does not address defendants' res judicata argument.

Canady's remaining claims are for IIED, NIED, and wrongful discharge in violation of North Carolina public policy. All arise under North Carolina law. In light of the dismissal of Canady's only federal claim and the early stage of this case, the court declines to exercise supplemental jurisdiction over Canady's state-law claims. See, e.g., 28 U.S.C. § 1367(c)(1), (3); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins., PLC, 685 F.3d 376, 394 (4th Cir. 2012); Waybright v. Frederick Cty., 528 F.3d 199, 209 (4th Cir. 2008); Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 196 (4th Cir. 2002); Farlow v. Wachovia Bank of N.C., N.A., 259 F.3d 309, 316–17 (4th Cir. 2001); Thompson v. Prince William Cty., 753 F.2d 363, 365 (4th Cir. 1985). Instead, the court remands the action to Pender County Superior Court.

III.

In sum, defendants' motion to dismiss [D.E. 14] is GRANTED IN PART, and plaintiff's

8

Family and Medical Leave Act claim is DISMISSED WITH PREJUDICE. The court DECLINES to exercise supplemental jurisdiction over Canady's state-law claims and REMANDS the action to Pender County Superior Court. The clerk shall close the case.

SO ORDERED. This 4 day of March 2016.

JAMES C. DEVER III
Chief United States District Judge